**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: QUEST DIAGNOSTICS, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. 2904 |

**MEMORANDUM OF PLAINTIFFS JORGE M. FERNANDEZ, JR. AND HECTOR J. VALDES IN SUPPORT OF THE TRANSFER TO AND CONSOLIDATION OR COORDINATION OF RELATED ACTIONS IN THE DISTRICT OF NEW JERSEY**

Plaintiffs Jorge M. Fernandez, Jr. and Hector Valdes (together, the "Movants") respectfully submit this memorandum of law in support of their motion for transfer to and consolidation or coordination in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1407 and pursuant to the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "Panel").

**FACTUAL BACKGROUND**

Ten class actions have been filed against units of Quest Diagnostics ("Quest"), American Medical Collection Agency, Inc. (AMCA) and Optum360 (collectively, "Defendants"), in the wake of Quest's disclosure that AMCA had notified Quest and Optum360 of a massive data breach compromising the confidential information of 11.9 million Quest patients. Quest is the world's leading provider of medical diagnostic testing services. Plaintiffs in all of the Related Actions allege that Defendants' lax data security measures allowed unauthorized outsiders access to that confidential information over a period of several months preceding the disclosure. *See* Schedule of Related Actions (submitted herewith). The Related Actions generally include counts alleging Defendants' negligence, breach of implied contract, and violations of various state

consumer protection statutes. The Related Actions have been filed on behalf of individuals whose confidential information was exposed as a result of those violations.

In light of the substantial legal and factual overlap among the Related Actions, transfer and consolidation or coordination to a single jurisdiction will ensure efficient pre-trial proceedings. The District of New Jersey is the most appropriate forum for transfer and consolidation or coordination of the Related Actions for at least the following reasons:

- Quest is headquartered in Secaucus, New Jersey, within a 20-minute drive from the Newark vicinage of the District of New Jersey;

- More Related Actions are pending in the District of New Jersey than in any other court;

- The District of New Jersey has demonstrated considerable expertise in the management of complex litigation generally, and with respect to data breach litigation in particular;

- Judge Madeline Arleo, to whom the first-filed case in New Jersey was assigned, is an experienced jurist, particularly with regard to complex class litigation; and

- The pace of dispositions in the District of New Jersey compares favorably with the other courts in which the Related Actions might be consolidated.

## ARGUMENT

### I. THE RELATED ACTIONS SHOULD BE TRANSFERRED AND CONSOLIDATED OR COORDINATED FOR PRETRIAL PROCEEDINGS.

The Related Actions should be transferred and consolidated or coordinated for pretrial proceedings pursuant to 28 U.S.C. § 1407(a), which permits transfer and consolidation or coordination of cases that meet three requirements: (1) the cases "involv[e] one or more common questions of fact;" (2) transfer and consolidation or coordination will further "the convenience of

parties and witnesses;" and (3) transfer and consolidation or coordination "will promote the just and efficient conduct of [the] actions." Transfer to and consolidation or coordination of the actions in the District of New Jersey will satisfy each of these objectives.

### A. Transfer And Consolidation Or Coordination Is Appropriate Because The Related Actions Involve One Or More Common Questions Of Fact And Law.

The Panel has consistently held that cases involving overlapping factual and legal issues are particularly appropriate for transfer and consolidation or coordination. The Panel also has consistently determined that related data breach cases satisfy § 1407 requirements, including in a half-dozen cases in just the last three years.[1] The Related Actions share common issues of fact and law, as well as substantially similar allegations. Plaintiffs in each of the Related Actions allege that Defendants lax data security measures allowed unauthorized outsiders access to Plaintiffs' confidential information. Therefore, the Related Actions should be transferred and consolidated or coordinated in one judicial district.

The common questions before the courts in the Related Actions include but are not limited to the following:

- Whether Defendants' data security systems prior to the Data Breach met the requirements of the applicable laws;

- Whether Defendants' data security systems prior to the Data Breach met industry standards;

---

[1] *See* MDL-2879, *In re: Marriott International, Inc., Customer Data Security Breach Litig.;* MDL-2826, *In re: Uber Technologies, Inc., Data Security Breach Litig.;* MDL-2807, *In re: Sonic Corp. Customer Data Security Breach Litig.;* MDL-2800, *In re: Equifax, Inc., Customer Data Security Breach Litig.;* MDL-2752, *In re: Yahoo! Inc. Customer Data Security Breach Litig.;* MDL-2737, *In re: 21st Century Oncology Customer Data Security Breach Litig.*

- Whether Plaintiffs' and other Class members' confidential information was compromised as a result of the data breach; and

- The appropriate measure of damages sustained by Plaintiffs and members of the class.

These common questions provide the Panel with good reason to centralize these actions in a single judicial district.

### B. Transfer and Consolidation or Coordination for Pretrial Proceedings Will Promote the Just and Efficient Conduct of the Related Actions.

Transfer and consolidation or coordination of the Related Actions for pretrial proceedings will also "promote the just and efficient conduct of [the] actions" in accordance with the third requirement of § 1407(a). The Related Actions will likely involve many of the same pretrial issues, such as those concerning the nature and scope of discovery and the sufficiency of Plaintiffs' allegations. If each district were forced to resolve these issues in separate pretrial proceedings, scarce judicial resources would be needlessly wasted. Moreover, there would be a substantial likelihood that such duplicative proceedings would result in inconsistent rulings, especially regarding the important issue of class certification.[2] Transfer and consolidation or coordination is necessary to avoid these inefficiencies and inconsistencies, and to promote the just and efficient conduct of the Related Actions.

---

[2] *See In re Commodity Exchange, Inc., Gold Futures & Options Trading Litig.*, 38 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) ("*Gold*"); *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 598 F. Supp. 2d 1366, 1367 (J.P.M.L. 2009) (consolidation "promote[s] the just and efficient conduct of this litigation"); *In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, 229 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002) (consolidation of cases filed nationwide would prevent inconsistent pretrial rulings).

### C. Transfer and Consolidation or Coordination for Pretrial Proceedings Will Further the Convenience of Parties and Witnesses.

The Panel has found that the convenience requirement is met when transfer and consolidation or coordination prevent duplicative discovery and inconsistent pretrial rulings. Here, transfer and consolidation or coordination for pretrial proceedings of the Related Actions will also serve "the convenience of the parties and witnesses" in accordance with the second requirement of § 1407(a). *See Gold*, 38 F. Supp. 3d at 1395 ("Centralization will eliminate duplicative discovery . . . prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.").

In this instance, convenience requires transfer and consolidation or coordination. Plaintiffs' similar allegations as to Defendants' misconduct in each of the Related Actions will require duplicative discovery and pretrial proceedings unless they are transferred and consolidated or coordinated in one district for pretrial purposes. To prove the claims alleged in the Related Actions, Plaintiffs will request the same documents and seek to depose many of the same individuals. There is no reason the parties should be required to respond to multiple motions and discovery requests or to require the parties and witnesses to travel throughout the United States to appear in multiple proceedings.

Transfer and consolidation or coordination will solve these problems: it will permit the transferee judge to formulate a single, unified pretrial program that minimizes the inconvenience and overall expense for all parties and witnesses. *See id.*; *see also In re Lidoderm Antitrust Litig.*, 11 F. Supp. 3d 1344, 1345 (J.P.M.L. 2014) (same); *In re Aluminum Warehousing Antitrust Litig.,* 988 F. Supp. 2d 1362, 1363 (J.P.M.L. 2013) (same).

**II.   THE RELATED ACTIONS SHOULD BE TRANSFERRED TO AND CONSOLIDATED OR COORDINATED IN THE DISTRICT OF NEW JERSEY.**

The Panel considers a variety of factors when determining the proper venue for transfer and consolidation or coordination. Among the factors to be assessed include: (1) the location of the parties, witnesses and documents; (2) where the greatest number of cases were filed; (3) the relative convenience of each potential venue; (4) the familiarity and expertise of the transferee district and transferee judge with the underlying issues present in the litigation; and (5) judicial case disposition statistics in the potential transferee districts.[3] These factors support transfer to and consolidation or coordination in the District of New Jersey.

**A.   A Significant Number Of Defendants, Witnesses, And Evidence Are Located In and Around The Southern District Of New Jersey.**

In deciding which district is appropriate for transfer and consolidation or coordination, the Panel considers the location of defendants. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 220 F. Supp. 3d 1356, 1359 (J.P.M.L. 2016) ("*Johnson & Johnson*") (selecting District of Jersey because principal defendant was headquartered there); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 787 F. Supp. 2d 1355, 1357 (J.P.M.L. 2011) (same). Based on the information available at this stage, Quest is the only Defendant whose conduct is certain to be relevant to the claims of all Plaintiffs

---

[3] *See In re MF Global Holdings Ltd. Inv. Litig.*, 857 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012); *In re Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014); *In re Wal-Mart ATM Fee*, 785 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011); *In re Commodity Exchange, Inc., Silver Futures & Options Trading Litig.*, 775 F. Supp. 2d 1382, 1383 (J.P.M.L. 2011); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. and Sales Practices Litig.*, 844 F. Supp. 2d 1380, 1380 (J.P.M.L. 2012); *In re Cardiac Devices Qui Tam Litig.*, 254 F. Supp. 2d 1370, 1373 (J.P.M.L. 2003).

and class members. Thus, the District of New Jersey is the most appropriate forum when considering the location of the Defendants.

Likewise, the Panel typically considers the nexus between the evidence and witnesses relevant to the related actions and the location of the MDL proceeding. *See Fosamax (No. II)*, 787 F. Supp. 2d at 1357 (selecting the District of New Jersey because "witnesses and documents of the common defendant…are located within the District of New Jersey"). Here, potential witnesses and evidence are likely located within the District of New Jersey because the principal Defendants, Quest, is headquartered in the district. *See id*.

### B. The Greatest Number of Related Actions Have Been Filed In The District of New Jersey.

The Panel has often looked to where the greatest number of cases have been filed as a basis for selecting a particular transferee forum. *See, e.g., Fosamax (No. II)*, 787 F. Supp. 2d at 1357 (selecting the District of New Jersey, citing "the number of cases pending there"); *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (selecting transferee district where most actions had been brought). To date, four of the ten Related Actions have been filed in the District of New Jersey, which favors its selection as the transferee forum.

### C. The District Of New Jersey Is The Most Suitable And Convenient Forum For The Related Actions.

In choosing an appropriate transferee district, the Panel also considers the convenience of the parties, their counsel, and potential witnesses. *See Johnson & Johnson*, 220 F. Supp. 3d at 1359 (transferring actions to District of New Jersey because the district "is a convenient and accessible forum for this nationwide litigation"); *In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1372 (J.P.M.L. 2004) (selecting the transferee district because the "district is a geographically convenient location, given the location of the principal defendants and potential

defendants and witnesses . . . ."). This factor also favors the transfer to and consolidation or coordination of the Related Actions in the District of New Jersey.

In addition, the District of New Jersey is a central and easily accessible location for all parties in the Related Actions, a factor that the Panel has given weight in choosing a transferee forum. *See In re Prempro Prods. Liab. Litig.*, 254 F. Supp. 2d 1366, 1368 (J.P.M.L. 2003) (selecting transferee district based, in part, on its geographic centrality). The District of New Jersey is serviced by Newark Liberty Airport, which offers regular flights to the places where the parties in the Related Actions are located. That airport is within a 10-minute drive of the Newark vicinage. Conversely, all of the actions pending in the Southern District of New York were filed at its White Plains location, which is relatively far removed from interstate transportation hubs.

**D.    The District of New Jersey and Judge Madeline Arleo Have the Experience and Resources to Adjudicate The Related Actions.**

Another factor that the Panel considers is the experience of a potential transferee forum in managing multidistrict litigation. *See, e.g., In re Puerto Rican Cabotage Antitrust Litig.*, 571 F. Supp. 2d 1378, 1378 (J.P.M.L. 2008). The District of New Jersey has handled numerous complex MDL and non-MDL class actions, including actions involving data breaches. *See, e.g., FTC v. Wyndham Worldwide Corp.*, No. 13-cv-1887, 2014 U.S. Dist. LEXIS 84913 (D.N.J. June 23, 2014); *In re Horizon Healthcare Services Inc. Data Breach Litig.*, 2:13-cv-07418 (D.N.J.); *Reilly v. Ceridien Corp.*, No. 10-cv-5142, 2011 U.S. Dist. LEXIS 17833 (D.N.J. Feb. 22, 2011).

Moreover, Judge Madeline Arleo, to whom the first Related Action filed in New Jersey is assigned, is highly experienced generally, and particularly experienced in the management of complex class actions against large corporate defendants. Judge Arleo served as a United States Magistrate Judge for 14 years before serving as a United States District Judge. In just the five years since, Judge Arleo has maintained responsibility for multiple complex class actions,

including but not limited to: *In re Thalomid & Revlimid Antitrust Litig.*, No. 14-cv-6997, 2018 U.S. Dist. LEXIS 186457 (D.N.J. Oct. 30, 2018); *Fried v. JPMorgan Chase & Co.*, No. 15-cv-2512, 2017 U.S. Dist. LEXIS 196839 (D.N.J. Nov. 30, 2017); *Afzal v. BMW of N. Am., LLC*, No. 15-cv-8009, 2017 U.S. Dist. LEXIS 118391 (D.N.J. July 27, 2017); *City of Sterling Heights Gen. Emples. Ret. Sys. v. Prudential Fin., Inc.*, No. 12-cv-05275, 2016 U.S. Dist. LEXIS 138469 (D.N.J. Sep. 29, 2016); *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820 (D.N.J. 2015); and *Davitt v. Am. Honda Motor Co.*, No. 2:13-cv-00381, 2015 U.S. Dist. LEXIS 192714 (D.N.J. May 8, 2015).[4]

### E.   Case Disposition Statistics Favor the District of New Jersey.

The Panel also considers the case disposition statistics of the proposed transferee district courts and each's ability to move the actions forward. *See, e.g., In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 932 (J.P.M.L. 1980) (transferring cases to the District of New Jersey where it had "disposed of its cases quicker than the other three districts); *In re Preferential Drug Prods. Pricing Antitrust Litig.*, 429 F. Supp. 1027 (J.P.M.L. 1977). As of March 31, 2019, the median time from filing to trial in the District of New Jersey was 5.1 months, a lower figure than any of the other districts in which Related Actions are pending. *See* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (March 31, 2019) (available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2019/03/31-1). And the percentage of cases over three years old in the District of New Jersey is 4.0, a lower

---

[4] Judge Arleo was recently assigned *In re: Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687 (D.N.J.). That case is nearly resolved, as all defendants have settled with each of two classes of purchasers, and former Chief Judge Linares preliminarily approved those settlements.

figure than any of the other districts in which Related Actions are pending, and a figure far beneath the same figure for the Southern District of New York, which stands at 18.8 percent. *Id.*

## CONCLUSION

For all of the foregoing reasons, Movants respectfully request that the Panel transfer and consolidate or coordinate the Related Actions to the District of New Jersey.

Dated:  June 7, 2019

Respectfully submitted,

/s/ Linda P. Nussbaum
Linda P. Nussbaum
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Floor
New York, NY 10036-8718
(917) 438-9189
lnussbaum@nussbaumpc.com

Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road
6th Floor
Ridgefield Park, NJ 07660
 (973) 639-9100
cseeger@seegerweiss.com

*Counsel for Plaintiffs Jorge M. Fernandez, Jr. and Hector Valdes*